UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHARLES STRAUSS,

                Petitioner,

v.

                                                    9:09-CV-0341 (LEK)

BRUCE YELICH, NYS Division of Parole,

                Respondent.

_____

**DECISION and ORDER**

**I.     BACKGROUND**

On April 22, 1991, Petitioner *pro se* Charles Strauss was sentenced in Madison County Court to concurrent, indeterminate prison terms of three to nine years and two and one-third to seven years after being convicted in that court of two counts of second degree burglary and two counts of third degree burglary. See, e.g., People ex rel. Strauss v. New York State Div. of Parole, 55 A.D.3d 1198, 1198 (3d Dept. 2008), leave denied, 12 N.Y.3d 702 (2009). On July 27, 1993, Strauss was released to parole supervision. Dkt. No. 21-3 at ¶ 4. On March 15, 1994, he was charged in a "Violation of Release Report" ("Violation Report") with four violations relating to his conditions of parole. Id. That Violation Report arose out of Strauss' claimed participation in a February 23, 1994, robbery of a convenience store in Kirkville, New York, and his failure to notify his parole officer of his arrest on charges related to that incident. Id.; see also Dkt. Nos. 21-11, 21-12 and 21-13. A preliminary parole revocation hearing relating to those claimed violations was held before hearing officer L. Pomerleau on March 16, 1994. See Dkt. No. 21-16. At the conclusion of that proceeding, the hearing officer found probable cause to believe that

Strauss had committed a parole violation. Id. at pp. 31-32. Thereafter, on April 6, 1994, Senior Parole Officer R. Wozna prepared a "Supplementary Violation Release Report" in which officer Wozna noted that he had received additional information which suggested that Strauss had committed other parole violations. See Dkt. No. 21-14.

On September 6, 1994, Strauss' attorney requested an adjournment of the final revocation hearing, Dkt. No. 21-19, and the hearing was ultimately adjourned to December 6, 1994. Dkt. No. 21-3 at 27-28.

The record further establishes that on November 18, 1994, Strauss was sentenced in Madison County Court after he was convicted of robbery in the second degree arising out of the February 23, 1994 robbery of the Kirkville convenience store. See, e.g., Decision and Judgment of Acting Supreme Court Justice S. Peter Feldstein (3/7/08) (Dkt. No. 21-4) ("March, 2008 Decision") at 2. Strauss was thereafter sentenced, as a predicate felony offender, to concurrent indeterminate sentences of seven and one-half to fifteen years imprisonment, which sentences were ordered to run consecutive to the undischarged portion of the April, 1991 sentences referenced above. See Dkt. No. 21-20 at 2.

The New York State Department of Correctional Services ("DOCS") took Strauss into its custody on December 2, 1994. That same day, the New York State Division of Parole ("Parole Board") issued a Notice of Final Declaration of Delinquency based on Strauss' November 18, 1994 sentencing in Madison County Court. Dkt. No. 21-3 at 32 ("Final Declaration").[1] That decision formally revoked Strauss' parole relating to his 1991 convictions. Id.; see, e.g.,

---

[1] The Parole Board issued the Final Declaration pursuant to New York Executive Law ("Executive Law") § 259i(3)(d)(iii).

Woodard v. Johnson, No. 93CV3925, 1995 WL 406132 (E.D.N.Y. June 23, 1995) (Notice of Final Declaration of Delinquency by the Parole Board "informed the plaintiff that his prior parole was being revoked on the basis of his felony convictions").

In October 2007, Strauss commenced a habeas corpus proceeding in New York Supreme Court, Franklin County. See Dkt. No. 21-1. In that application, he claimed that the warrant which contended that he had committed a parole violation in connection with the New York robbery charges was a "nullity," and that his incarceration was illegal, because he had not been afforded a final parole revocation hearing within ninety days of March 16, 1994 – the date on which hearing officer Pomerleau issued his probable cause determination. Id.[2] Acting Supreme Court Justice S. Peter Feldman concluding that "there [was] no basis for habeas corpus relief under the facts and circumstances" of that case because Strauss' "subsequent felony conviction, coupled with the imposition of a new indeterminate sentence of imprisonment, provide[d] an independent basis for the revocation of parole by operation of law pursuant to Executive Law § 259-i(3)(d)(iii)." See March, 2008 Decision at 4 (citation omitted). Judge Feldman therefore dismissed Strauss' petition. Id. Strauss appealed that decision. However, in its order dated October 30, 2008, the New York State, Supreme Court, Appellate Division, Third Department unanimously affirmed that decision of the Supreme Court. Strauss, 55 A.D.3d at 1199. The Appellate Division concluded that: "[r]egardless of the merits of petitioner's claim that he was not afforded a final parole revocation hearing in accordance with the requirements of Executive Law § 259-i(3)(f)(i), he is presently incarcerated due to his 1994 convictions of robbery in the

---

[2] In that habeas application, Strauss asserted that he had neither sought nor requested an adjournment of the final revocation hearing. See Dkt. No. 21-1 at 6.

3

second degree which provide an independent basis for revoking his parole pursuant to Executive Law § 259-i(d)(iii)." Id. Strauss sought leave to appeal that decision to the New York Court of Appeals, however such application was denied by that court on February 12, 2009. People ex rel. Strauss v. New York State Div. of Parole, 12 N.Y.3d 702 (2009).

Strauss commenced the present action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this District on May 17, 2009. See Dkt. No. 1. On June 15, 2009, Strauss filed an amended habeas application in this matter. See Dkt. No. 6 ("Amended Petition"). In that application, petitioner argues that: i) he was denied his right to a final parole revocation hearing within ninety days of the hearing officer's probable cause finding, as required by Executive Law § 259-i(3)(f)(i); ii) because he was not afforded a final revocation hearing, he was denied his right to confront adverse witnesses and to present mitigating evidence in his defense to the parole violation charge, as provided by Executive Law § 259-i(3)(f); iii) by failing to conduct a final revocation hearing, he was denied his right to appeal the revocation decision; and iv) as a result of the foregoing, his current term of imprisonment has been impermissibly extended beyond his maximum sentence. See Amended Petition, Ground One through Four.

On December 3, 2009, the Office of the Attorney General of the State of New York, acting on respondent's behalf, filed an answer and memorandum of law in opposition to Strauss' Amended Petition. See Dkt. Nos. 19-20. In opposing that petition, respondent argues that, *inter alia*, that this action was not commenced within the one year statute of limitations applicable to § 2254 habeas corpus petitions, and that therefore this Court must dismiss Strauss' amended pleading on this basis. See Respondent's Memorandum of Law in Opposition to Petition (Dkt. No. 20), Point I. Strauss thereafter filed a Traverse in which he reiterates his claim that he is

entitled habeas intervention in this action. See Dkt. No. 23 ("Traverse"). This matter is currently before this Court for disposition.

## II.     DISCUSSION

### A.     Applicable Statute of Limitations

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), brought about significant new limitations on the power of a federal court to grant habeas relief to a state court prisoner under 28 U.S.C. § 2254. One of those limitations was the imposition of a one-year window of time for the filing of such habeas petitions.[3] 28 U.S.C. § 2244(d)(1); Cook v. New York State Div. of Parole, 321 F.3d 274, 279-80 (2d Cir. 2003). As the Supreme Court noted in Duncan v. Walker, 533 U.S. 167 (2001), the AEDPA's statute of limitations "reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal

---

[3]     The one-year statute of limitations runs from the latest of

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

habeas review." Duncan, 533 U.S. at 179.

The Second Circuit Court of Appeals has held that the "factual predicate" of a claim challenging the revocation of one's parole is the date on which the petitioner is "notified that the administrative decision to revoke his parole had become final." Cook, 321 F.3d at 280.  Thus, in light of the AEDPA statute of limitations, a habeas corpus challenge concerning the revocation of one's parole must be commenced within one year of that notice.  Id. at 280-81; see also Jackson v. Morrisey, No. 08-CV-029S, 2009 WL 3300259, at *5 (W.D.N.Y. Sept. 27, 2009) (citing Cook).

In the case *sub judice*, the Parole Board notified Strauss that the decision to revoke his parole had become final on December 2, 1994.  See Final Declaration.  Because that date was prior to the enactment of the AEDPA's statute of limitations, Strauss had until April 24, 1997 – or one year after the enactment of the AEDPA – within which to timely file his application seeking federal habeas relief challenging the December, 1994 revocation of his parole.  Ross v. Artuz, 150 F.3d 97, 103 (2d Cir. 1998).

In the present case, Strauss' first challenge to the revocation of parole, on which the present habeas application is based, appears to be the state habeas corpus action filed by him in the Supreme Court, Franklin County, on October 6, 2007.  See Dkt. No. 21-1 at 7 (Strauss signing his state habeas application on October 6, 2007).  That date was more than *ten years* after the April 24, 1997 deadline applicable to Strauss' federal habeas petition under the AEDPA had expired.  Since that state court action did not reset the applicable limitations period, Smith v. McGinnis, 208 F.3d 13, 178 (2d Cir. 2000) (per curiam), it is clear that the present application is untimely.

The Second Circuit, however, has indicated that a habeas petition which would otherwise be subject to dismissal in light of the AEDPA's statute of limitations may nevertheless be considered by a district court if the court determines that the limitations period should be equitably tolled.  See Smith, 208 F.3d at 17-18.  Additionally, although the Second Circuit has acknowledged that the "question remains open" as to whether the United States Constitution requires that an "actual innocence" exception be included in the AEDPA's statute of limitations, see Whitley v. Senkowski, 317 F.3d 223, 225 (2d Cir. 2003), the Second Circuit has directed district courts to consider a claim of actual innocence before dismissing a habeas petition as untimely filed.  Whitley, 317 F.3d at 225; see also Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004) (citing Whitley); see also Velez v. Walsh, No. 07-CV-1037, 2010 WL 519816, at *2-3 (E.D.N.Y. Feb. 9, 2010) (citing Menefee).

  B.  Factors to Consider Prior to Finding Habeas Petition Time-Barred

    1.  Equitable Tolling

"[I]n 'rare and exceptional circumstances' a petitioner may invoke the courts' power to equitably toll the limitations period" imposed by the AEDPA.  See Menefee, 391 F.3d at 159 (citing Smith, 208 F.3d at 17); see also Dixon v. Conway, 613 F. Supp. 2d 330, 347 (W.D.N.Y. 2009) (quoting Menefee) (other citation omitted).  A federal district court may only properly toll the AEDPA's statute of limitations on this basis when "extraordinary circumstances" prevented the petitioner from timely filing his petition.  See Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (citation omitted); see also Menefee, 391 F.3d at 154; Dixon, 613 F. Supp. 2d at 347; Cardona v. Andrews, No. 04 CIV. 6534, 2005 WL 2649026, at *3 (S.D.N.Y. Oct. 14, 2005) (citation omitted).  "To merit application of equitable tolling, the petitioner must demonstrate that he

acted with reasonable diligence during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances beyond his control prevented successful filing during that time." Smaldone v. Senkowski, 273 F.3d 133 (2d Cir. 2001) (internal quotation and citation omitted); Dixon, 613 F. Supp. 2d at 347 (citing Smith, 208 F.3d at 17).

The record firmly establishes that Strauss did not act with reasonable diligence between the date on which the determination to revoke his parole became final and the date on which he filed this action. Significantly, Strauss has not alleged in either his Amended Petition or Traverse that he was prevented from timely filing this action due to circumstances over which he had no control.[4] Additionally, as noted above, Strauss waited more than *ten years* after the Parole Board issued its Final Declaration which resulted in the revocation of Strauss' parole before commencing the present action. Accordingly, this Court finds no basis to invoke equitable tolling in order to salvage his untimely habeas corpus action.

    2.    Actual Innocence

Strauss claims that he is actually innocent of the claimed parole violation. See generally Supporting Mem. Specifically, he argues that because the probable cause determination was issued on March 16, 1994, he was statutorily entitled to a final revocation hearing no later than

---

[4] In his Traverse, Strauss appears to contend that several of the documents submitted by the respondent in conjunction with this action were either not provided to Strauss when he previously requested those documents, or that such documents are sufficiently ambiguous so as to excuse his late filing of the present action. See Traverse. This Court cannot, of course, determine whether and to what extent Strauss was given the documents that were provided to the Court by respondent and which Strauss now claims he never received. However, nothing before the Court suggests that such documents are not authentic, have been altered in any way, or may not be properly relied upon by this Court in determining: i) the date on which the Parole Board issued the Final Declaration referenced above; ii) the date on which Strauss' final parole revocation hearing was to be held; and iii) whether the date of that hearing was subsequent to the date on which his parole was automatically revoked by operation of law. Moreover, nothing in Petitioner's filings has satisfied this Court that it may properly excuse his late filing of this matter.

8

ninety days from that date – no later than June 16, 1994. See Supporting Mem. at p. 2. He contends that because no such hearing ever occurred, the tentative finding of a parole violation became a nullity by operation of law, and that he is therefore actually innocent of the claimed violation. See id. at 2-7; see also Traverse.

However, this argument overlooks the fact that counsel appointed to represent Strauss at the scheduled final parole revocation hearing requested an adjournment of that hearing on two separate occasions. See, e.g., Dkt. No. 21-3 at 27 (letter from Strauss' appointed counsel requesting adjournment of final parole revocation hearing until September 12, 1994); id. at 28 (Parole Board noting that final revocation hearing was again rescheduled "at the request of releasee/attorney" from September, 1994 date until December 6, 1994). Thus, the record before this Court establishes that the final revocation hearing relating to Strauss was to occur no earlier than December 6, 1994. As noted above, however, prior to that date – on November 18, 1994 – Strauss was sentenced to an indeterminate term of imprisonment of seven and one-half to fifteen years based upon his conviction in Madison County Court of second degree robbery. See March, 2008 Decision at 2. Thus, *before* his final revocation hearing was to be held, Petitioner was both: i) convicted of committing another felony; and ii) sentenced to an indeterminate term of imprisonment relating to that conviction in Madison County Court.

"[A] parolee convicted of committing a new felony and sentenced to an indeterminate term is not . . . entitled to a final revocation hearing by reason of a 1984 statutory amendment [to New York's Executive Law]. [Such] [f]elons ... are subject to revocation of parole by operation of law *without any hearing*." People ex rel. Harris v. Sullivan, 74 N.Y.2d 305, 308 (1989) (emphasis added); see also Jackson, 2009 WL 3300259, at *7; People ex rel. Camarano v.

Costello, 306 A.D.2d 885, 885-86 (4th Dept. 2003). Thus, as the court noted in Keyes v. Juul, 270 F. Supp. 2d 327 (E.D.N.Y. 2003):

> Where, as here, a parolee is arrested and convicted of a new crime, the need for a final hearing . . . evaporates because the requirements of due process are satisfied either by the trial underlying the parolee's conviction or waived by his plea of guilty. See McDaniel v. Stachowski, 1995 WL 428619 (W.D.N.Y.), aff'd 104 F.3d 349 (2d Cir. 1996) (concluding that "The Issuance of a Final Declaration of Delinquency eliminates the need for a final hearing because the revocation occurs thereupon by operation of law. In other words and as common sense dictates, a new sentence following conviction automatically triggers revocation of parole.") See also People v. Sullivan, 74 N.Y.2d 305, 307-308, 546 N.Y.S.2d 821, 545 N.E.2d 1209 (1989) ("a parolee convicted of committing a new felony and sentenced to an indeterminate term is not even entitled to a final revocation hearing"); Keyes v. Ernest Edwards, 2000-CV-4297 (Sup.Ct., Orange Co., Oct. 16, 2000).

Keyes, 270 F. Supp. 2d at 329.

Here, Strauss' parole was revoked, by operation of law, *prior to* the date on which he was scheduled to have his final parole revocation hearing. Since he was therefore not entitled to a final revocation hearing, his claim that his parole was never properly revoked because he never had such a final hearing is necessarily without merit. Consequently, Strauss has failed to demonstrate that he is "actually innocent" of the parole violation referenced in his Amended Petition. This Court therefore cannot excuse his extremely late filing of this action under this final exception to the AEDPA's statute of limitations.

### III.  CERTIFICATE OF APPEALABILITY

The Court next notes that 28 U.S.C. § 2253(c) provides, in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –

> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . .[5]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2).  Since Petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

## IV.   CONCLUSION

Strauss filed this action seeking habeas intervention more than a decade after the Parole Board issued the Final Declaration revoking his parole.  Strauss' commencement of this proceeding also occurred more than ten years after the one-year grace period afforded him after the enactment of the AEDPA's statute of limitations had run.  Moreover, the facts of this case do not demonstrate that Strauss is entitled to a tolling – equitable or otherwise – of the governing statute of limitations.  Finally, the claim that he is actually innocent of the parole violation is without substance.

**THEREFORE,** it is hereby

**ORDERED**, that Strauss's Amended Petition (Dkt. No. 6) is **DENIED** and **DISMISSED** in its entirety; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action in accordance with the District's Local Rules; and it is further

---

[5] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." See Fed.R.App.P. 22(b).

**ORDERED**, that any state court records not electronically filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

A Certificate of Appealability shall not be issued by this Court.

**IT IS SO ORDERED.**

DATED:     May 17, 2010
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge